# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID ALAN WYATT,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ZANCHI, et al.,<br><br>　　　　　Defendants.<br>_____ / | CASE NO. 1:09-cv-01242-BAM PC<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 19)<br><br>ORDER DENYING PLAINTIFF'S MOTION TO WITHDRAW OR AMEND ADMISSIONS; MOTION FOR JUDICIAL NOTICE; AND MOTION FOR SANCTIONS<br><br>(ECF Nos. 22, 24, 30)<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S SUR-REPLIES<br><br>(ECF No. 31) |

**I.  Background**

Plaintiff David Alan Wyatt ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on the complaint, filed July 17, 2009, against Defendants Zanchi and Jones for retaliation in violation of the First Amendment. On May 2, 2011, Defendants filed a motion for summary judgment. (ECF No. 19.) Plaintiff filed a motion to withdraw his admissions on June 30, 2011. (ECF No. 22.) On July 11, 2011, Plaintiff filed a request for judicial notice, opposition[1] to Defendant's motion for

---

[1] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the Court in an order filed on April 2, 2010. Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

1

summary judgment, declaration, and response to Defendants' motion for summary judgment, and Defendants' filed a reply. (ECF Nos. 23-27.) On July 14, 2011, Defendants filed an opposition to Plaintiff's request to withdraw his admissions. (ECF No. 28.) On July 28, 2011, Plaintiff filed a sur-reply and a motion for sanctions. (ECF No. 29, 30.) Defendants filed a motion to strike Plaintiff's sur-reply on August 2, 2011. (ECF No. 31.) Plaintiff filed a reply to Defendants' opposition to his motion to withdraw his admissions and declaration on August 9, 2011. (ECF Nos. 32, 33.) On August 15, 2011, Plaintiff filed an opposition to Defendants' motion to strike his sur-reply and Defendants filed a reply on August 17, 2011. (ECF Nos. 34, 35.)

## II.     Motion to Withdraw Admissions

Plaintiff moves to withdraw his admissions because he believed that no response was necessary and did not become aware of the legal consequence of his failure to respond until the motion for summary judgment was filed. Plaintiff received Defendants request for admissions and decided that they did not need to be responded to. Plaintiff was feeling overburdened and oppressed by Defendants' requests and chose to wait for a court order before responding to the requests. It wasn't until Defendants filed their motion for summary judgment on May 2, 2011, that Plaintiff realized the legal consequence of his failure to respond to Defendants' requests for admissions.

Plaintiff argues that if he is not allowed to withdraw his admissions the case will be "muddled, jumbled, tangled, and complicated." (Motion to Withdraw Admissions 4, ECF No. 22.) Plaintiff states that, while Defendants will be inconvenienced, they will not suffer prejudice from granting his motion. Alternately, Plaintiff requests that the Court reopen discovery.

Defendants oppose Plaintiff's motion to withdraw his admission on the grounds that upholding the admissions would not eliminate any presentation of the case on the merits, Defendants would be prejudiced, and Plaintiff failed to show good cause why he waited 220 days after his responses were due to file his motion to withdraw his admissions. Alternately, if Plaintiff's motion is granted, Defendants request monetary sanctions, including attorney's fees, for the expenses caused by Plaintiff's failure to serve timely responses.

1  Defendants state that since their motion for summary judgment is largely based upon the
2 merits of the case, denying Plaintiff's motion will not practically eliminate presentation of the merits.
3 Defendants argue that due to Plaintiff's failure to respond to any of their discovery requests and their
4 meet and confer letter, they determined that further discovery would be futile. Plaintiff was informed
5 of the consequences of his failure to respond to the requests for admissions prior to the discovery
6 cut-off date and there was no indication that he intended to file a motion to withdraw his admissions.
7 Defendants relied on Plaintiff's admissions prior to the discovery cut-off date, dispositive motion
8 date, and for 220 days prior to Plaintiff filing his motion to withdraw.

9  Defendants also argue that if the Court finds that Plaintiff satisfies the test to allow him to
10 withdraw his admissions, Plaintiff has not shown good cause for the delay. Finally, Defendants state
11 that Plaintiff's request to reopen discovery should be denied because he has failed to meet the good
12 cause standard required to modify the scheduling order. In the alternative, Defendants request
13 sanctions of attorney's fees and costs in the amount of $1,225.

14  Plaintiff replies that Defendants discovery requests were propounded to obtain a technical
15 and tactical advantage to prevent the merits of his case from being heard. Plaintiff argues that the
16 letter he received was a "gotcha letter," an after the fact "nose thumbing," and "threatening" letter,
17 but not a meet and confer letter. As a pro se litigant, he is exempt from initial disclosures and
18 Defendants are attempting to mislead the court because they did not make initial disclosures.
19 Defendants have failed to show that they would be prejudiced by granting his motion. Defendants
20 are not entitled to sanctions and now that Plaintiff has the assistance of a jailhouse lawyer he is ready
21 to begin litigating this action.

22  Pursuant to Rule 36(a) of the Federal Rules of Civil Procedure,

> [a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1)... A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney.

Additionally, the Rules provide that "[a] matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed.

3

R. Civ. P. 36(b).  "[T]he court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on its merits."  Id.

Two prongs must be satisfied for the court to allow the party to withdraw his admissions: 1) withdrawal must promote presentation of the action on its merits; and 2) the party who obtained the admission must not be prejudiced by the withdrawal.  Hadley v. United States, 45 F.3d 1345, 1348 (9th Cir. 1994).  The court must specifically consider both prongs of the rule in deciding a motion to amend or withdraw admissions.  Conlon v. United States, 474 F.3d 616, 622 (9th Cir. 2007).

The first prong of the test is met when upholding the admissions will eliminate presentation of the case on its merits.  Hadley, 45 F.3d at 1348.  The parties disagree as to whether denying Plaintiff's motion will eliminate presentation of the case on the merits.  Admissions are to be sought to facilitate proof regarding "issues that cannot be eliminated from the case . . . and to narrow the issues by eliminating those that can be."  Conlon, 474 F.3d at 621.

While Plaintiff argues that the admissions sought here were propounded to gain a tactical and technical advantage, the documents themselves prove otherwise.  It is Defendants contention that they did not retaliate against Plaintiff by placing him in administrative segregation, but that Plaintiff was mistakenly placed in the general population after he had threatened Officer Ybarra.  The requests for admissions propounded by Defendant Jones specifically address the issues of the incident that occurred with Officer Ybarra, the transfer options available, and the mistaken release of Plaintiff into the general population.  The requests for admissions addressed the issues that Defendants needed to narrow in order to prepare their defense in this action.  However, the requests for admissions also ask Plaintiff to admit that Defendants Jones and Zanuchi did not retaliate against him, which would be dispositive on the merits of Plaintiff's claim.  Therefore, the first prong is met because denying Plaintiff's motion would eliminate presentation of the case on the merits.

The second prong, prejudice to the party obtaining the admissions, is "not simply that the party who obtained the admission will now have to convince the fact finder of its truth.  Rather, it relates to the difficulty a party may face in proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence" with respect to the questions that were

previously deemed admitted. Brook Village North Assoc. v. General Elec. Co, 686 F.2d 66, 70 (1st Cir. 1982); Hadley, 45 F.3d at 1348. Courts are more likely to find prejudice to the party during trial of the action. Hadley, 45 F.3d at 1349. The party who obtained the admission has the burden of establishing that withdrawal of the admission would prejudice his case. Id. at 1348; FDIC v. Prusia, 18 F.3d 637, 640 (8th Cir. 1994). Defendants argue that they would suffer prejudice from the withdrawal of Plaintiff's admissions because they relied on Plaintiff's admissions and determined that it would be futile to seek further discovery since Plaintiff failed to respond to any of their discovery requests. However, lack of discovery, without more, does not constitute prejudice. Conlon, 474 F.3d at 624.

While Defendants have relied on the admissions in their motion for summary judgment, this is insufficient to establish prejudice. Id. Cases which have found prejudice to support allowing the admissions to stand have required a greater showing of prejudice than found here. Hadley, 45 F.3d at 1349; see Westmoreland v. Triump Motorcycle Corp., 71 F.R.D. 192 (D. Conn. 1976) (permitting withdrawal of admissions that were one year late where defendants promptly filed a motion to withdraw). Defendants have failed to meet their burden to show that they would suffer prejudice and the second prong is met.

"Rule 36(b) is permissive, not mandatory, with respect to the withdrawal of admissions," and and a court is not required to grant the relief even when the two prongs are satisfied. Conlon, 474 F.3d at 621, 624. In determining whether to exercise its discretion to allow the party to withdraw or amend the admissions, the court may also consider other factors, including whether the moving party has shown good cause and the strength of the case on the merits. Conlon, 474 F.3d at 625. The Court finds that Plaintiff's conduct in completely failing to respond to Defendants discovery requests and attempt to meet and confer justify the denial of Plaintiff's motion to withdraw his admissions.

On October 8, 2010, Defendants served requests for admissions, interrogatories, and requests for production of documents on Plaintiff. Plaintiff had forty five days to respond to the discovery requests. On December 13, 2010, Defendants sent Plaintiff a meet and confer letter informing him of the consequences of failing to respond to the requests for admissions and that he had waived his

1  objections by failing to respond to the interrogatories and request for production of documents.
2  Plaintiff did not respond to any of Defendants discovery requests or to the meet and confer letter.

3  Plaintiff states that he was overwhelmed by the requests, however Defendants only served
4  a total of twenty one requests for admissions, twenty one interrogatories, and eight requests for
5  production of documents. A review of these documents demonstrates that the requests were not over
6  burdensome. Additionally, Plaintiff merely had to write his response in the space provided on the
7  request for admissions and return a copy to Defendants.

8  Good cause requires a showing of due diligence. Johnson v. Mammoth Recreations, Inc.,
9  975 F.2d 604, 609 (9th Cir. 1992). While Plaintiff claims that he did not believe he needed to
10 respond to the discovery requests absent a motion to compel, Defendants' letter of December 13,
11 2010, informed him that his admissions were deemed admitted. Still Plaintiff took no action to
12 respond to the discovery requests or to file a motion to withdraw his admissions. Additionally,
13 Plaintiff states that it wasn't until he received the motion for summary judgment, which was served
14 on May 2, 2011, that he realized the legal significance of his failure to respond. Yet Plaintiff still
15 waited almost two more months, and did not file his motion to withdraw until June 30, 2011.
16 Plaintiff has failed to show good cause exists to grant his motion.

17 Plaintiff's argument that he believed he did not have to respond to the discovery requests that
18 were served by Defendants is unpersuasive. The discovery and scheduling order, issued June 21,
19 2010, informed the parties that responses to discovery requests "shall be due forty-five (45) days
20 after the request is first served." (Discovery and Scheduling Order 1:22, ECF No. 17.) Plaintiff may
21 not disregard the orders of the Court and the discovery rules without consequence. Further,
22 Plaintiff's characterization of the meet and confer letter sent December 13, 2010, is not accurate.
23 The letter stated:

24 > On October 8, 2010, you were served with requests for admission, set one, request for production of documents, set one, and interrogatories, set one, on behalf of my clients Mr. Zanchi and Mr. Jones. Your responses were due November 22, 2010 and are now three weeks late. The requests for admissions have now been deemed admitted and you have waived your objections to the requests for production of documents and the interrogatories.
25
26
27

28 > Please produce any responsive documents to my office by December

6

> 29, 2010 in order to avoid a motion to compel. If I am required to
> prepare a motion to compel, I will seek monetary sanctions for having
> to do so.

The letter was a legitimate attempt to meet and confer and no language could be construed as intending to mislead Plaintiff into believing he did not have to respond without a court order.

Plaintiff contends that Defendants are trying to mislead the Court because they failed to make initial disclosures. However, Federal Rule of Civil Procedure exempts from initial disclosure "an action brought without an attorney by a person in the custody of the United States." Fed. R. Civ. Proc. 26(a)(1)(B). While Defendants request sanctions if Plaintiff's motion is granted, monetary sanctions are not available given that Plaintiff is incarcerated and proceeding in forma pauperis, making the imposition of such sanctions of no consequence. This is not a case where Plaintiff promptly filed a motion to withdraw his admissions once his was aware that he had failed to respond. This is not a case where plaintiff attempted to comply with his discovery obligations. Plaintiff waited over six months from being informed by defense counsel that his failure to respond had resulted in the admissions deemed admitted, and almost two months from when he stated that he was aware of the legal significance of the admissions before filing this motion. Based on the foregoing, Plaintiff's motion to withdraw or amend his admissions is denied.

**III.    Motion to Strike Plaintiff's Sur-replies**

Defendants move to strike Plaintiff's reply to Defendants' objections to Plaintiff's statement of disputed facts and motion for the Court to consider the imposition of sanctions on the grounds that they are an improper sur-reply couched as a motion for sanctions.

The Local Rules provide for a motion, an opposition, and a reply. Neither the Local Rules nor the Federal Rules provide the right to file a surreply, and the Court neither requested one nor granted a request on the behalf of Plaintiff to file one. Accordingly, Defendants' motion shall be granted in part and Plaintiff's sur-reply, filed July 28, 2010, shall be stricken from the record. (ECF No. 29.) However, Defendants' motion to strike Plaintiff's motion for the imposition of sanctions shall be denied.

**IV.    Motion for Summary Judgment Legal Standard**

Pursuant to Federal Rule of Civil Procedure 56©, summary judgment is appropriate when

7

it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Summary judgment must be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). However, the court is to liberally construe the filings and motions of pro se litigants. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010.) The "party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (quoting Rule 56© of the Federal Rules of Civil Procedure).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.

The parties bear the burden of supporting their motions and oppositions with the papers they wish the Court to consider and/or by specifically referencing any other portions of the record for consideration. Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The Court will not undertake to mine the record for triable issues of fact. Simmons v. Navajo County, Arizona, 609 F.3d 1011, 1017 (9th Cir. 2010)

**V.    Undisputed Facts**

1. At all times relevant to this lawsuit, Plaintiff was a prisoner properly in the custody of the California Department of Corrections and Rehabilitation ("CDCR") at the California Correctional Institution ("CCI").
2. Defendant Zanchi is employed by the CDCR as a Facility Captain at CCI.

3. Defendant Zanchi has been employed by the CDCR for over 24 years and has been employed at CCI since 1989.

4. From March 2006 until August 2009, Defendant Zanchi held the position of Unit IVA (CCIIVA) Facility Captain at CCI.

5. Defendant Jones is employed by the CDCR as a Lieutenant at CCI.

6. Defendant Jones has been employed by the CDCR for over 15 years and has been employed at CCI since 2000.

7. From October 2006 until June 2009, Defendant Jones held the position of Unit IVA (CCIIVA) Lieutenant at CCI.

8. The Unit IVA yard is the only 180 design General Population yard at CCI.

9. Unit IVA houses Level IV inmates, meaning it houses the most dangerous inmates and the inmates who pose the most risk to the safety of the institution.

10. On February 13, 2008, the CCI Institution Classification Committee (ICC) elected to release Plaintiff from the Security Housing Unit (SHU) to CCI-IVA General Population on March 27, 2008, pending transfer to California State Prison, Sacramento (SAC-IV (180)).

11. On August 6, 2008, Defendant Jones issued Plaintiff a CDC 114-D Administrative Segregation (ASU) Placement Notice.

12. In preparing Plaintiff's CDC 114-D, Defendant Jones reviewed Plaintiff's inmate appeal (log number CCI-0-08-01930) which he submitted on July 24, 2008.

13. Defendant Jones also reviewed 1) a CDC-128G Unit Classification Committee (UCC) Chrono dated July 9, 2008, 2) a CDC 128-G Classification - CSR Action chrono dated July 22, 2008, 3) a CDC 115 Rules Violation Report (RVR), and 4) a CDC 115 Part C documenting his hearing regarding the RVR, all of which Plaintiff attached to his appeal.

14. After reviewing Plaintiff's inmate appeal and the documents attached to the appeal, Defendant Jones placed Plaintiff into the ASU on August 6, 2008 because Plaintiff presented an immediate threat to the safety and security of not only himself, but of Officer G. Ybarra

1   and the institution as well.[2]

2   15.   Defendant Jones determined that Plaintiff had been released back to the Unit IVA General Population by mistake.

3   16.   Because Plaintiff had been found guilty on January 10, 2006 of threatening Officer Ybarra, and because Officer Ybarra was currently assigned to Unit IVA General Population, Defendant Jones determined that Plaintiff's continued presence on Unit IVA created a safety and security issue for Plaintiff, Officer Ybarra and the institution.

17.   On August 18, 2008, after being placed into ASU, Plaintiff submitted another inmate appeal (log number CCI-0-08-02181) alleging retaliation.

18.   Plaintiff requested an immediate transfer to SAC-IV (180), which he was endorsed to on August 26, 2008.[3]

19.   In preparing his first level appeal response to this appeal, Defendant Zanchi reviewed 1) Plaintiff's RVR, 2) a CDC 128-G Institutional Classification Committee (ICC) chrono dated February 13, 2008, 3) the CDC 114-D Administrative Segregation Unit Placement Notice dated August 6, 2008, and 4) a CDC 128-G Classification - CSR Action chrono dated August 26, 2008.

20.   Based on his careful review and consideration of all the documents and information submitted in writing, and after a thorough review and investigation were conducted into Plaintiff's claim, Defendant Zanchi, along with Correctional Counselor II D. Chapman, denied Plaintiff's appeal (log number CCI-0-08-02181) at the first level on September 4, 2009.

21.   In his appeal response, Defendant Zanchi noted that Plaintiff had been released to Unit IVA General Population by mistake.

22.   Plaintiff should have remained in ASU because of a guilty finding of a Rules Violation

---

[2] Plaintiff disputes as he only presented a possible threat to the institution, not an immediate threat. However, by failing to respond to the requests for admissions, Plaintiff admitted that he was deemed a threat to the safety of others at the institution and to the security of the institution.

[3] Plaintiff disputes as he did not request an immediate transfer to SAC-IV, he requested to be released for ad seg and to be transferred as soon as possible.

       Report ("RVR") for Threatening a Peace Officer at CCI Unit IVA and that ICC inappropriately released Plaintiff to Unit IVA General Population pending transfer.[4]

23. Defendant Zanchi determined the release had been an oversight because ICC did not realize that the involved staff member, Officer Ybarra, was assigned to CCI-IVA at the time Plaintiff was released to CCI-IVA.

24. Defendant Jones and Defendant Zanchi did not retaliate against Plaintiff.[5]

25. Defendant Jones' decision to place Plaintiff in ASU on August 6, 2008, and Defendant Zanchi's decision to deny Plaintiff's inmate appeal on September 4, 2008, was not in retaliation for Plaintiff filing an inmate appeal but rather was due to the legitimate penological interests of the safety and security of Plaintiff, Officer Ybarra, and the institution.[6]

26. Plaintiff is a Level IV prisoner, meaning he is one of the most dangerous inmates and poses the most risk to the safety and security of the institution and others.

27. Having Plaintiff housed on the same yard as Officer Ybarra, the same officer whom Plaintiff was found guilty of threatening, created a safety issue for both Plaintiff and Officer Ybarra.

28. Plaintiff's placement into ASU on August 6, 2008, and the denial of his inmate appeal on September 4, 2008, had nothing to do with the filing of his inmate appeal, but was ordered because of Plaintiff's RVR for threatening Officer Ybarra which created a safety and security issue for Plaintiff, Officer Ybarra, and the institution.[7]

---

[4] Plaintiff disputes as he should never have been placed in ASU in the first instance and therefore should not have remained there. However, by failing to respond to the request for admission, Plaintiff admitted that he was released by mistake from the ASU back into the general population.

[5] Plaintiff disputes as Defendants took adverse action against him because they received his grievance. However, by failing to respond to the requests for admission, Plaintiff admitted that Defendants Jones and Zanchi did not retaliate against him.

[6] Plaintiff disputes as Defendants took adverse action against him because they received his grievance. However, by failing to respond to the request for admission, Plaintiff admitted that he was not placed back into the ASU due to filing an inmate appeal, but because of his conviction of a rule violation for threatening Officer Ybarra.

[7] Plaintiff disputes as Defendants took adverse action against him because they received his grievance. However, by failing to respond to the requests for admission, Plaintiff admitted that he was not placed back into the ASU due to filing an inmate appeal, but because of his conviction of a rule violation for threatening Officer Ybarra.

11

29. Unit IVA is the only Level IV 180 design General Population yard at CCI, and thus was the only General Population yard to which Plaintiff could have been released on March 27, 2008 because Plaintiff is a Level IV 180 design inmate.

30. Because Officer Ybarra was assigned to Unit IVA, Plaintiff should never have been released to Unit IVA on March 27, 2008 in the first place.[8]

31. Having an inmate in the same unit as an officer who he has previously been found guilty of threatening creates a safety and security concern for each party and the institution.

32. Inmates in ASU do not have the privilege of making phone calls, are not allowed contact visits but can have non-contact visits, receive a canteen allowance less than General Population, and only have limited property compared to General Population.

33. Inmates in ASU with court deadlines are given priority over General Population inmates to go to the law library.

34. Plaintiff has never responded to the Requests for Admissions propounded by Defendant Zanchi and Defendant Jones.

35. Plaintiff has admitted that he was released into Unit IVA General Population by mistake and that Defendant Jones did not retaliate against him or violate his First Amendment rights because his placement back into ASU was not due to his filing of an inmate appeal but rather was ordered because of his conviction of a RVR for threatening Officer G. Ybarra.[9]

36. Plaintiff has admitted that Defendant Zanchi did not retaliate against him or violate his First Amendment rights by denying his appeal.[10]

37. Plaintiff has admitted that he did not suffer any physical injuries, emotional injuries, or miss

---

[8] Plaintiff disputes because the decision to release Plaintiff into the general population was to be made by a committee of administrative staff, not individual of lower administrative rank. However, by failing to respond to the requests for admission, Plaintiff admits that his release into the general population was by mistake.

[9] Plaintiff disputes because he did not admit that his release was a mistake. However, by failing to respond to the requests for admission, Plaintiff admitted that he was released into the general population by mistake.

[10] Plaintiff disputes without stating a reason. However by failing to respond to the requests for admission Plaintiff admitted that Defendant Zanchi did not retaliate against him.

12

any court deadlines because of his placement back into ASU on August 6, 2008.[11]

38. Plaintiff has admitted that he was released into Unit IVA General Population by mistake and that Defendant Jones did not retaliate against him or violate his First Amendment rights because his placement back into ASU was not due to his filing of an inmate appeal but rather was ordered because of his conviction of a RVR for threatening Officer G. Ybarra.

39. Plaintiff has admitted that Defendant Zanchi did not retaliate against him or violate his First Amendment rights by denying his appeal.

40. Plaintiff has admitted that he did not suffer any physical injuries, emotional injuries, or miss any court deadlines because of his placement back into ASU on August 6, 2008.

## VI. Discussion

### A. Plaintiff's Allegations

On February 13, 2008, Plaintiff appeared in front of the ICC who recommended that he would be transferred to 4A-Facility pending his transfer to a different prison. Plaintiff explained to the ICC that he had been found guilty of threatening Officer Ybarra and had been sentenced to a SHU term for the violation. The ICC downplayed the situation and told Plaintiff he would be held in the Behavioral Management Unit ("BMU") until he was transferred.

In June 2008, Plaintiff was transferred from the BMU to the yard on which Officer Ybarra worked. The next day Officer Ybarra came to Plaintiff's cell and said, "We can take care of you now Wyatt" and walked away. Plaintiff felt threatened. Plaintiff appeared before a committee and was told that no transfers were going to take place. Approximately two weeks later Plaintiff filed an appeal. Defendants Zanchi and Jones retaliated against Plaintiff by placing him back in ASU.

### B. Defendants' Motion for Summary Judgment

Defendants bring this motion for summary judgment on the grounds that there is no evidence that Plaintiff was placed in ASU for filing a grievance, that there was any chilling effect on Plaintiff's First Amendment rights, that Defendants Zanchi and Jones actions failed to serve a

---

[11] Plaintiff disputes because he did not admit that he did not suffer injuries. However by failing to respond to the requests for admissions Plaintiff admitted that he did not suffer nay physical or emotional injuries by being placed back into the ASU.

1 legitimate penological interest, Plaintiff had admitted that Defendants Zanchi and Jones did not
2 retaliate against him, and Defendant Zanchi and Jones are entitled to qualified immunity.

### C. Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). Prisoners may base retaliation claims on harms that do not raise due process concerns. Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005); Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000); Pratt, 65 F.3d at 807. To establish a prima facie case, plaintiff must show that defendants took adverse action against him because of his protected conduct, and that the action chilled the exercise of his First Amendment rights, and the action did not reasonably advance a legitimate correctional goal. Rhodes, 408 F.3d at 567; accord Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009). The injury asserted in retaliation cases is the retaliatory conduct's chilling effect on the plaintiff's First Amendment rights. Broadheim, 584 F.3d at 1269-70.

A plaintiff asserting a retaliation claim must demonstrate a "but-for" causal nexus between the alleged retaliation and plaintiff's protected activity (i.e., filing a legal action). McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979); see Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 97 S. Ct. 568 (1977). The prisoner must submit evidence, either direct or circumstantial, to establish a link between the exercise of constitutional rights and the allegedly retaliatory action. Pratt, 65 F.3d at 806. "To prevail on a retaliation claim, a plaintiff must show that his protected conduct was the substantial or motivating factor behind the defendant's conduct." Broadheim, 584 F.3d at 1271 (internal punctuation and citation omitted).

Defendants are entitled to summary judgment based upon Plaintiff's failure to prove two of the required elements of a First Amendment claim for retaliation. On January 10, 2006, Plaintiff was convicted of a rule violation for threatening Officer Ybarra. After Plaintiff was placed on the same yard as Officer Ybarra and told that he would not be transferred to another institution, he filed the appeal which he alleges the retaliatory action was based upon. In Plaintiff's appeal, he states that he does not want to be around Officer Ybarra because he constantly causes trouble. Plaintiff states

that Officer Ybarra lied and had Plaintiff sentenced to the SHU for threatening his life. Plaintiff stated that he cannot function around Officer Ybarra. He included the review committee recommendation showing that Defendant Ybarra was still employed at CCI.

When Defendant Jones received Plaintiff's inmate appeal he realized that Plaintiff had been placed on the same yard as Officer Ybarra by mistake. (UF 15.) Having an inmate and an officer who he has been found guilty of threatening on the same yard creates a security and safety concern for both the inmate and the officer, as well as the institution. (UF 31.) There was only one general population yard that Plaintiff could be released to and Officer Ybarra was assigned to work that yard. (UF 8; Declaration of Zanchi 6, ECF No. 19-7.) Because having Plaintiff and Officer Ybarra on the same yard created a risk for both Plaintiff and Officer Ybarra, Defendant Jones decided to place Plaintiff in the ASU pending review of his case factors and appropriate housing needs by the ICC. (UF 25; Declaration of Zanchi 3, ECF 19-8.)

Plaintiff argues that Defendants admitted to reviewing his inmate appeal establishes that his placement in ASU was retaliatory. However, it was by reviewing the appeal that Defendant Jones became aware that there was a safety and security issue due to Plaintiff and Officer Ybarra being placed on the same yard. The fact that the appeal made Defendant Jones aware of the issue does not establish that Plaintiff was retaliated against for filing the grievance. Defendant Jones became aware of the issue because Plaintiff filed his grievance. It was Plaintiff's conviction of the rule violation, not the grievance, that was the substantial or motivating factor behind Defendant Jones' conduct. Broadheim, 584 F.3d at 1271. Plaintiff was placed in ASU due to the grievance making Defendant Jones aware of the issue, not as an adverse action because Plaintiff filed the grievance.

Similarly Plaintiff has failed to submit evidence to show that Defendant Zanchi, by denying his appeal of his placement in ASU, acted in retaliation for Plaintiff's protected conduct. Defendant Zanchi reviewed the relevant documents and determined that Plaintiff had been mistakenly placed on the same yard as Officer Ybarra. (UF 25.) The denial of Plaintiff's appeals was not in retaliation for the appeal that was filed, but was due to the mistake in placing Plaintiff on the yard with Officer Ybarra. Plaintiff has failed to show that the filing of the grievance was the substantial or motivating factor behind the defendants' conduct. Broadheim, 584 F.3d at 1271. There is simply no evidence

raising a genuine dispute as to any material fact regarding Plaintiff's placement in ASU being in retaliation for his filing an inmate grievance.

Plaintiff argues that having him placed in ASU did not serve or advance a legitimate penological interest. While Plaintiff states that there was no legitimate penological interest served by removing him from the same yard as Officer Ybarra, his complaint demonstrates that such interest existed. Plaintiff states that the day after he was placed on the yard, Officer Ybarra came to his cell and said, "We can take care of you now Wyatt" and walked away. Plaintiff stated that he felt threatened. This demonstrates the reason why having an inmate in the same unit as an officer who the inmate has previously been found guilty of threatening creates a safety and security concern. (UF 31.) It has long been established that security of the institution is a legitimate penological interest. Procunier v. Martinez, 416 U.S. 396, 413, 94 S. Ct. 1800, 1811 (1974), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401, 109 S. Ct. 1874 (1989). Removing Plaintiff from the yard where Officer Ybarra worked did reasonably advance a legitimate correctional goal, protecting Plaintiff and Officer Ybarra from possible harm is a legitimate security concern.

Although Plaintiff has requested judicial notice and provided copies of California Code of Regulations sections, the Court has reviewed the material and finds that it is not relevant to the issues presented here. Plaintiff has failed to meet his burden to show that placing him in ASU did not advance a legitimate penological goal. The Court finds that Plaintiff has failed to demonstrate the existence of a genuine issue of material fact in regard to his claim against Defendants Jones and Zanchi and that Defendants Jones and Zanchi are entitled to judgment as a matter of law on Plaintiff's retaliation claim.

### D. Remaining Arguments

Since the Court finds that Defendants Jones and Zanchi are entitled to summary judgment based on the foregoing analysis, the court does not reach the remaining arguments of the parties or Defendants' argument that they are entitled to qualified immunity.

## VII. Plaintiff's Motion for the Imposition of Sanctions

Plaintiff requests that the Court exercise its inherent authority and impose sanctions upon defense counsel for making a frivolous argument and attempting to perpetrate a fraud upon the

Court. Plaintiff argues that, by claiming that Defendant Jones was not acting outside of his authority because he was not a formal reviewer in investigating Plaintiff's inmate appeal defense counsel has advanced a frivolous argument and has attempted to intentionally influence the court to adopt a skewed reading of the appeal regulations.

In the notice Plaintiff received regarding his placement in ASU, Defendant Jones stated that, "after reviewing an inmate appeal" that Plaintiff filed it was determined that Plaintiff had been released into the general population by mistake. (Motion for Summary Judgment 97, ECF No. 19.)

In the reply to Plaintiff's opposition to the motion for summary judgment, Defendants argue that:

> JONES was not acting outside the scope of his authority, nor does WYATT have any evidence that he was, when JONES reviewed WYATT'S appeal and its supporting documents because he was not the formal "reviewer" who signed his appeal response, but simply a person who reviewed the appeal and gathered information, information which showed that WYATT was released to the General Population by mistake because he was a threat to himself, Officer Ybarra, and the institution.

The Court construes this argument to address Plaintiff's claim that Defendant Jones did not have the authority to have Plaintiff placed back into ASU because the ICC had released him to the general population.

Federal courts have broad powers to impose sanctions against parties or counsel for improper conduct in litigation. The Court derives the power to impose sanctions on parties or their counsel from three primary sources of authority, "(1) Federal Rule of Civil Procedure 11, which applies to signed writings filed with the court, (2) 28 U.S.C. § 1927, which is aimed at penalizing conduct that unreasonably and vexatiously multiplies the proceedings, and (3) the court's inherent power." Fink v. Gomez, 239 F.3d 989, 991 (9th Cir. 2001).

Under Rule 11 a party has an affirmative duty to investigate the law and facts prior to filing. Rachel v. Banana Republic, Inc., 831 F.2d 1503, 1508 (9th Cir. 1987). Whether to impose sanctions is determined by the reasonableness of the inquiry into the law and facts. G.C. & K.B. Investments v. Wilson, 326 F.3d 1096, 1109 (9th Cir. 2003).

The Court has inherent power to sanction parties or their attorneys for improper conduct.

Chambers v. Nasco, Inc., 501 U.S. 32, 43-46 (1991); Roadway Express, Inc. v. Piper, 447 U.S. 752, 766 (1980); Fink v. Gomez, 239 F.3d 989, 991 (9th Cir. 2001). The imposition of sanctions under the court's inherent authority is discretionary. Air Separation, Inc. v. Underwriters at Lloyd's of London, 45 F.3d 288, 291 (9th Cir. 1995). The court's "inherent power 'extends to a full range of litigation abuses.'" Fink, 239 F.3d at 992 (quoting Chambers, 501 U.S. at 46-47). However, in order to sanction a litigant under the court's inherent powers, the court must make a specific finding of "bad faith or conduct tantamount to bad faith." Fink, 239 F.3d at 994.

The Court fails to find that the argument set forth by Defendants in their reply to Plaintiff's opposition rises to the level of "bad faith or conduct tantamount to bad faith." Fink, 239 F.3d at 994. Accordingly, Plaintiff's motion for sanctions is denied.

## VIII. Conclusion and Order

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's motion to withdraw his admissions, filed June 20, 2011, is DENIED;
2. Plaintiff's motion for judicial notice, filed July 11, 2011, is DENIED;
3. Defendants' motion to strike Plaintiff's sur-replies is GRANTED IN PART and Plaintiff's reply to Defendants objections is STRICKEN from the record;
4. Plaintiff's motion for the imposition of sanctions is DENIED;
5. Defendants' motion for motion for summary adjudication as to Plaintiff's retaliation claims against Defendants Jones and Zanchi is GRANTED;
6. All pending motions are terminated; and
7. The Clerk of the Court is directed to enter judgment for Defendants Jones and Zanchi and close this action.

IT IS SO ORDERED.

Dated:   **November 21, 2011**          **/s/ Barbara A. McAuliffe**
                                    UNITED STATES MAGISTRATE JUDGE